Argued July 7, affirmed July 20, rehearing denied September 14, 1915.

## AITKEN *v.* BJERKVIG.*

(150 Pac. 278.)

**Fraud—Pleading—Complaint—Sufficient.**

1. The complaint in an action for fraud, inducing plaintiffs to exchange their city residence property for acreage land of defendants, which alleges that plaintiffs were ignorant of farming land and strangers to the real estate and locality where such land was situated, that, on arriving at the land, a defendant represented that a part thereof was fit for cultivation, and that it was not necessary for plaintiffs to inspect the land, but that they could rely on the representation of defendant, and that the representation was false, and that defendant knew of the falsity, and that plaintiffs relied on the representations, states a cause of action.

[As to action to recover for false representations, see note in 18 Am. St. Rep. 55.]

**Fraud—Actionable Fraud.**

2. Where parties deal at arm's-length and have equal opportunity to ascertain the truth as to the quality of the property involved, and no reliance is placed on the representations made by the vendor, the purchaser must take the consequences of his own neglect, and may not rely on the vendor's representations.

*As to the effect of false representations and the right to rely on them, see notes in 35 L. R. A. 417; 37 L. R. A. 593.

REPORTER.

Fraud—Fraudulent Representations—Statement of Facts Recklessly Made.

3. One making a false statement of fact recklessly, without knowledge of its truth or falsity, and with intent to influence a transaction and actually influencing it, is liable for fraud.

Fraud—Fraudulent Representations—Reliance on Representations.

4. A false statement by a vendor of agricultural land as to the quality thereof, made to induce a purchaser ignorant of the quality and values of agricultural land, and actually relied on by him, is actionable, for the purchaser could rely on the representations.

Fraud—Actionable Fraud—Evidence.

5. In an action for fraud in inducing plaintiffs to exchange their city residence property for agricultural land, evidence *held* to require submission to the jury of the issues.

[As to what is sufficient proof of fraud, see note in 65 Am. Dec. 157.]

Fraud—Fraudulent Representations—Damages.

6. Where defendants fraudulently represented that there were 30 acres of arable land on a tract conveyed to plaintiffs in exchange for their city residence property, while there were only 7 or 8 acres of arable land, and the rest of the land was not capable of being cultivated without great additional expense, the jury could award substantial damages for the fraud.

Appeal and Error—Questions Reviewable—Assignment of Error—Bill of Exceptions.

7. A complaint as to the measure of damages, in an action for fraud, cannot be reviewed on appeal, where it is not assigned as error or presented by the bill of exceptions.

From Multnomah: HENRY E. McGINN, Judge.

Department 1. Statement by MR. JUSTICE BURNETT.

The plaintiffs, J. A. Aitken and Maggie Aitken, bring this action against John Bjerkvig and Jacob J. Bjerkvig, to recover damages for an alleged fraud said to have been practiced upon them by the defendants in exchange of residence property in Portland, Oregon, for acreage owned by the defendants in Lincoln County, Oregon. After describing the Portland realty and alleging that the defendant John Bjerkvig was acting for himself and the other defendant, the complaint avers, in substance, that the defendants represented the Lincoln County land to consist of 60 acres of open timber and 30 acres of cleared land, which had

theretofore been under cultivation, and that the tract had on it a stream of water valuable for water-power purposes, the stream being wholly within the premises; that the plaintiffs were ignorant of farming land and agricultural processes and strangers to the real estate and the locality where it was situated. The primary pleading then contains this allegation:

"That, upon arriving at what the said defendant John Bjerkvig represented to be the tract in question, he pointed out to the plaintiff a tract of land which he stated was part of the 30 acres above referred to as fit for cultivation. That said tract was covered with a rank growth of ferns and weeds, but otherwise appeared to be clear. That the said defendant so pointed the same out to the plaintiff from near the vehicle which had conveyed the parties to the land. Thereupon the plaintiff proposed to walk into the ferns and weeds and examine the land more closely, but the defendant John Bjerkvig told him it was not necessary for him to do so, saying that the land was all clear and ready for the plow; that plaintiff could take his word for that; that all of the 30 acres was like what the parties saw near where they were standing on the edge of the tract; and that in that locality land which had not been cultivated for some years always grew up to ferns and other weeds in the manner in which said tract appeared to be grown up. That the plaintiff, because of his ignorance of all agricultural matters, and because of his confidence in the honesty and good faith of the defendant, was persuaded by the defendant not to examine said tract otherwise than as aforesaid, and returned with the defendant to Portland, Oregon, and closed the deal; the plaintiffs deeding their dwelling-house, as aforesaid, to said Jacob J. Bjerkvig."

The plaintiffs charge that closer inspection made by them after the exchange was finally effected revealed that 23 acres of the 30-acre tract represented by the defendants to be clear and fit for cultivation in fact had

never been cultivated or cleared and was covered with dead and down timber, logs, stumps and roots of trees, all of which were concealed by the ferns and weeds to such an extent as to be wholly invisible from the place where the defendant pointed out the land to the plaintiff. The usual allegations that the defendants knew the true conditions of the tract, and that the plaintiffs were ignorant of the same, and relied upon the representations made by the defendants, appear also in the complaint.

After a general demurrer to the pleading had been overruled, defendants filed an answer admitting the exchange of properties, that plaintiffs inspected the Lincoln County land, and that John Bjerkvig acted for Jacob, his son, in making the exchange, but otherwise traversing the complaint and averring new matter not necessary to be here considered. The trial resulted in a judgment for the plaintiffs, from which the defendants appeal.          AFFIRMED. REHEARING DENIED.

For appellants there was a brief over the names of *Mr. C. A. Applegren and Messrs. Seton & Strahan,* with an oral argument by *Mr. Applegren.*

For respondent there was a brief and an oral argument by *Mr. B. G. Skulason.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. The assignments of error are three in number: (1) The overruling of the demurrer to the complaint; (2) disregarding defendants' objection to the reception of any evidence on the ground that the complaint fails to state facts sufficient to constitute a cause of action; and (3) denying the defendants' motion for a

judgment of nonsuit at the close of the evidence for the plaintiffs on the ground that the testimony offered up to that time failed to prove their cause of action. The substance of their testimony is that they and a man named Bender went in company with John Bjerkvig to look at the land. They arrived there in the night, and the next morning went to view the premises. The defendant pointed out a tract that was grown up with tall ferns and weeds and said:

"No one has been living on this for over two years. ferns grow up mighty quick in this country."

The plaintiff J. T. Aitken then proposed to go into the ferns and examine the land, when Bjerkvig assured him there was no use going through the ferns; that the plaintiff could rely upon his word. The ferns were very wet at the time, and, taking defendant's statement as true, the plaintiffs made no further examination of the land thus covered with the ferns. It is also in testimony that subsequent examination showed that only about seven acres of the tract had ever been plowed, and that the remainder pointed out by the defendant as land ready for the plow was covered with logs and stumps concealed by the weeds and ferns, and that it was utterly unfitted for plowing, and could not be made arable, except at great expense. In our judgment, the complaint states facts sufficient to constitute a cause of action.

2. The question is, then, whether there was any testimony competent to go to the jury on the issues involved. The defendants contend that because the plaintiffs had an opportunity of examining the land, but did not, they have no right to rely upon the representations made by the defendant. It is true, as a

77 Or.—26

general rule, that where parties deal at arm's-length, and have equal opportunity to ascertain the truth as to the quality of the property involved, and no reliance is placed upon the representations made by the seller, the buyer must take the consequences of his own neglect.

The rule is thus tersely stated by Mr. Justice Field in *Slaughter's Admr.* v. *Gerson,* 13 Wall. 379, 385 (20 L. Ed. 627) :

"Where the means of information are at hand and equally open to both parties, and no concealment is made or attempted, the language of the cases is that the misrepresentation furnishes no ground for a court of equity to refuse to enforce the contract of the parties. The neglect of the purchaser to avail himself, in all such cases, of the means of information, whether attributable to his indolence or credulity, takes from him all just claims for relief."

*Van Horn* v. *O'Connor,* 42 Wash. 513 (85 Pac. 260), was a case involving an exchange of land. Mr. Chief Justice Mount there said:

"This court has frequently held that, where representations are made as a matter of opinion, there is no liability for misrepresentations, where the parties are dealing at arm's-length, and the means of knowledge are as open to one party as to the other. * * But where the representations made are of material facts within the knowledge of the vendor, and entirely without the knowledge of the vendee, and where the circumstances are such as reasonably call for a reliance thereon, the rule is that the vendee may rely upon the representations of the vendor."

Again, Mr. Justice Hadley, writing in *Mulholland* v. *Washington Match Co.,* 35 Wash. 315, 321 (77 Pac. 497, 499), uses this language:

"It is argued that since no fiduciary relation existed, and since it is not alleged that respondent was overcome by cunning or artifice, by reason of being frail of body, or of weak and imbecile mind, caused by advanced age or disease, he does not show a ground for relief. It cannot be the law that a person of ordinary faculties may never rely upon representations made to him, even though no fiduciary relation may exist. Each case must depend upon its own circumstances."

*Grider* v. *Clopton,* 27 Ark. 244, noted in defendants' brief, was a case where the purchaser was skilled in land values and made an actual examination of the whole premises unhindered or uninfluenced by the seller.

In the *Slaughter-Gerson Case,* already referred to, the seller made no representations whatever, but invited a full examination of the property, in that instance a steamboat, and the purchaser himself made a full, complete and independent inspection, having the aid of ship carpenters, whom he employed to determine the draft of the vessel.

In *Wimer* v. *Smith,* 22 Or. 469 (30 Pac. 416), the property involved was a mining claim with an appurtenant water right. The defendant resisted foreclosure of a purchase-money mortgage on the ground that the plaintiff had misrepresented the availability of the water for mining that particular ground. The court denied relief to the defendant because the testimony very clearly showed that he had made a full, complete and independent inspection of the property and water right with the aid of a skilled mining man in his employ and had declared that he bought the property on his own judgment without taking the statement of any person.

In *Jackson* v. *Armstrong,* 50 Mich. 65 (14 N. W. 702), the question involved was an alleged fraud in the exchange of farms. The testimony offered tended to show that the seller of one of the farms falsely represented to the purchaser, on a view of the land at which both were present, that the low ground could be drained, most of it made tillable, and the rest fitted for pasturage; that the water was then high, because the season had been late; and that the farm was a very valuable one. The trial judge had excluded this evidence on the ground that, as the defendant had a view of the premises, he was bound to rely on the testimony of his own eyes. The appellate court, however, said that the principle had been misapplied, and that the practicability of draining the land was not necessarily apparent on a mere view, and then used this language:

"Bearing in mind the quality of the facts and the character of the inquiry, it was certainly not a question of law whether the truth was discoverable by the defendant by being on the farm, and the trial judge was not at liberty to rule on the subject as though it was. The facts should have gone to the jury under proper instructions as to whether there was fraud or not. The circumstance that the defendant was on the farm would not be sufficient to cut him off from making proof of any fraudulent representations, which his being there would not enable him to impeach."

We take these references entirely from precedents cited by the defendants in their brief. They all depend upon the principle that both parties had equal means of knowledge and like opportunities to observe, and that no effort had been made to prevent inspection. In our judgment the litigants in the instant case did not have equal opportunities to know the truth.

3–5.   The defendants appear to have been familiar with the realty they were offering to sell, or, if not, a statement of fact made by them recklessly without knowledge of its truth or falsity, and with intent to influence the trade, would equally bind them.   The plaintiff husband was a carpenter and was ignorant of the quality and values of agricultural land.   The statement of the seller of the farm that the buyer could rely upon his word, and that there was no use of his going into wet ferns to examine the land, had a tendency to dissuade him from close inspection.   A different case would be presented if in fact the plaintiffs had possessed a general knowledge of such lands, and if the defendants had made no statement calculated to forestall minute inspection.   If the defendants spoke at all with a view of influencing the conduct of the plaintiffs, it was their duty to speak the whole truth. The doctrine is aptly stated by Mr. Justice WATERMAN in *Van Velsor* v. *Seeberger,* 59 Ill. App. 322, 326, in this excerpt:

"Any person has a right to rely upon positive statements or warranties of a vendor as to the quality of an article he offers for sale, where the article is not present, or, if present, its appearance does not contradict the representations.   A positive statement of quality, the truth or falsity of which is not apparent, has a tendency to dissuade one from making an inspection. * * A vendor may not willfully make false representations as to material facts about the construction or quality of a house and escape liability therefor by showing that the matters of which he spoke were open to the inspection and scrutiny of the defendant, and that, if he believed the lie, it was his own fault.   Such is not, in this generation, either the law or a description of common honesty:   Benjamin on Sales, 382, 390; *Witherwax* v. *Riddle,* 121 Ill. 140 [13 N. E. 545]."

As to the weight to be accorded to these representations we make no intimation. That was for the jury. The only question for us to determine, in passing upon the correctness of the decision of the motion for a nonsuit, is whether there was any evidence to go to the jury on the issues involved. We are clear that there were representations made by the defendants, through the one speaking for both, calculated to and which must have influenced the conduct of the plaintiffs, and upon which the latter had a right to rely, and hence enough was shown to carry the case to the jury as against a motion for a nonsuit.

6. The defendants further urge that the true measure of damages is the difference between the market values of the properties exchanged, and that, because no evidence was offered on that question, the plaintiffs failed to prove their case in an essential particular. But referring again to a precedent cited by the defendants, namely, *Van Velsor* v. *Seeberger,* 59 Ill. App. 322, 326, we find this language:

"It is shown that the representations as set out in the letter were made, and that they were made to influence plaintiff to purchase the house; that he relied upon them; that some of those that were material were untrue. It is plain that there is some damage. The house is not as good as it would be if the representations were true. How much the damage is is not shown, but, under the circumstances, at least nominal damages should have been assessed"; citing authorities.

So in this case, there being evidence tending to show that the plaintiffs were influenced by the untrue statements of the defendants to take the land in question, and that, instead of there being 30 acres of arable land on the premises, there were only 7 or 8, there would

be enough testimony to go to the jury on the question of damages. If, in fact, the land was not capable of being cultivated without great additional expense, it is a matter within the common sense of the average juror that it would not be as valuable as land already subject to the plow. Evidence of the market values of the properties exchanged would be only cumulative upon that already given about the actual state of the premises. The errors assigned, as before stated, depend upon whether the facts alleged are sufficient to constitute a cause of action, and whether there was any evidence proper to be submitted to the jury on the issues presented. Both these questions must be decided against the defendants.

7. Some complaint was made in the argument about the measure of damages, but it is not assigned as error; neither is the question presented by the bill of exceptions. Hence we cannot attend to the discussion of that point.

So far as the record shows, the case was properly submitted to the jury for its decision, and the judgment must be affirmed.

AFFIRMED. REHEARING DENIED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE BENSON and MR. JUSTICE HARRIS concur.