Argued April 10, affirmed September 17, rehearing denied October 15, 1929.

# NELLIE M. MILTON *v.* WILLIAM G. HARE ET AL.

(280 Pac. 511.)

For appellant there was a brief and oral argument by *Mr. Darrel W. Milton.*

For respondents there was a brief over the names of *Messrs. Clark, Skulason & Clark, Mr. E. B. Tongue, Messrs. McCamant & Thompson* and *Messrs. Maccormac Snow, Crandall & McCourt,* with oral arguments by *Mr. A. E. Clark, Mr. W. Lair Thompson* and *Mr. Snow.*

COSHOW, C. J.—■ Where there is an issue of fact a motion for judgment on the pleadings cannot be allowed: *Smith* v. *Aplanalp et al.,* 126 Or. 213, 215

et seq. (267 Pac. 1070); *Oregon & Western Coloniza-tion Co.* v. *Willoughby,* 122 Or. 170, 176 et seq. (257 Pac. 812).

The sufficiency of the complaint or the jurisdiction of the court may be inquired into at any stage of the proceedings of a trial: Or. L., § 72. If the pleadings taken together affirmatively show that plaintiff has no cause of action against defendants, a judgment on the pleadings in favor of defendants is properly rendered. If the pleadings as a whole disclose that defendants have no defense to the cause of action stated in the complaint, judgment in favor of plaintiff against the defendants on the pleadings is proper: Or. L., § 79.

■ Unless plaintiff had a good cause of action against Lohmire, whom she accuses of having cheated and defrauded her, she has no cause of action against defendants. Unless she had a good cause of action against Lohmire for fraud she lost nothing by the conduct of defendants, even though they were guilty of gross negligence: 2 R. C. L. 1023, § 105; 3 Am. & Eng. Ency. of Law (2 ed.), 398, par. 9; 6 C. J. 709, under the heading of "Damages"; *Maryland Casualty Co.* v. *Price et al.,* 231 Fed. 397, 401 (Ann. Cas. 1917B, 50); *Jones* v. *Wright,* 19 Ga. App. 242 (91 S. E. 265); *Vooth* v. *McEachem,* 181 N. Y. 28 (2 Ann. Cas. 601, 73 N. E. 488); *Beam* v. *Bakewell,* 224 Mo. 203 (123 S. W. 561). Unless said Lohmire actually defrauded plaintiff she was not damaged by anything her attorneys did in the suit to foreclose the mortgage held by Schantin, who was not involved in any way by the exchange of properties between said Lohmire and plaintiff.

■ ■ A purchaser of real property induced to make the purchase by false representations upon discovery of the fraud has a choice of remedies. First, he may

rescind, return or offer to return, what he received and sue to collect what he gave; second, he may institute a suit to rescind the purchase and sale, or as in this case, rescind the exchange of properties. In order to prevail the party seeking to rescind must offer to return what he has received and to place the other party in the same position as he was before the exchange; third, he may affirm the sale or exchange and sue for damages: *McCabe* v. *Kelleher*, 90 Or. 45, 50 (175 Pac. 608); *Billups et al.* v. *Colmer*, 118 Or. 192, 200 (244 Pac. 1093); *Stark et al.* v. *McKenna et al.*, 124 Or. 332, 346 (263 Pac. 391); *Hanna* v. *Hope*, 86 Or. 303, 310 (168 Pac. 618).

■ The charges of fraud are very general and are set out in paragraph 3 of the complaint and are in the following language:

"A. C. Lohmire for the purpose of cheating and defrauding this plaintiff, falsely and fraudulently represented and induced her to believe that he was the owner of the following described real property, situated in Washington County, Oregon, which was worth the sum of $17,500.00, and that he paid the said amount therefor * * and fraudulently represented that the land included in said description was good agricultural land, capable of being successfully cultivated and farmed and that same was well located and had a good natural drainage, which was false and which was known by said Lohmire to be false."

Then followed the allegation that the plaintiff trusted and believed the said Lohmire and relied thereon in making the exchange of property. Then followed the other statements heretofore set out, none of which states in what particular the representations were false, nor do any of the allegations designate how plaintiff was prevented from inspecting the Washington County land before making the exchange.

Under a similar state of facts this court in *McCabe* v. *Kelleher,* above, quotes with approval from *Kruse* v. *Bush,* 85 Or. 394 (167 Pac. 308). From *McCabe* v. *Kelleher,* above, page 53 (175 Pac. 608, 610), we quote:

"The rule is thus tersely laid down by Mr. Justice BEAN in *Reimers* v. *Brennan,* 84 Or. 53 (164 Pac. 552):

" 'A purchaser must use reasonable care for his own protection and should not rely blindly upon statements made by a seller; and between parties dealing at arm's-length where no fiduciary relation exists and no device or artifice is used to prevent an investigation, it is the general rule that a purchaser must make use of his means of knowledge, and failing to do so, he cannot recover on the ground that he was misled by the seller: 30 Cyc. 49; *Allen* v. *McNeelan,* 79 Or. 606 (156 Pac. 274); *Poland* v. *Brownell,* 131 Mass. 138 (40 Am. Rep. 215). Where there has been an inspection by a person making an exchange of property, false representations as to the value cannot as a rule be made the basis of an action for damages.' (Citing authorities.)

"Where no fiduciary relation exists between the contracting parties and each is *sui juris* dealing at arm's-length with the other, each is required to use diligence in a reasonable degree to protect his own interest. Neither is held to be the guardian or protector of the other. Neither can inertly shut his eyes to what is manifest to a person of ordinary intelligence. In order to excuse him from reasonable care of his own interest in respect to the subject matter of the contract which is plainly before his observation, there must be some effort on the part of the other party or some condition tending to forestall or prevent investigation. * *.

"The doctrine that in order to excuse either party from thus protecting himself there must be some artifice practiced by the other to thwart investigation, is set out in *Aitken* v. *Bjerkvig,* 77 Or. 397 (150 Pac. 278)."

Now, looking at the complaint we cannot find anything stated in the complaint indicating that said Lohmire sustained a fiduciary relation in any degree to the plaintiff. We cannot find anything indicating that he in any manner or way prevented plaintiff from examining the Washington land or having it done so as to enable her to determine for herself the quality of that land. The alleged representations of fraud are such as any person would likely make regarding a tract of land he had for sale. That land is "good agricultural land" is an expression of opinion. That land is "capable of being successfully cultivated and farmed" would be stated of any general farm in the Willamette Valley "and that the same was well located" is open to view and easily determined by any person of ordinary intelligence. Whether or not it has "good natural drainage" is easily determined from an ordinary examination or inspection of the land itself. Taken in connection with the failure of the plaintiff to give any excuse for not viewing the land personally, or having some one do it for her, it is our opinion that the complaint does not state a cause of action for fraud against said Lohmire. The distance from Portland to the land is about 30 miles. The land is only a short distance from the west side Pacific Highway, a paved thoroughfare extending from Portland westward through Hillsboro, then southerly through Gaston to Corvallis. The land in question is near the town of Gaston. Both the Oregon Electric and Southern Pacific operate trains not far from the Washington County tract of land. The Oregon Electric operates trains into Forest Grove and the Southern Pacific through Forest Grove southerly through Gaston to Corvallis. The land, therefore, was not remote from Portland, where we assume the plaintiff resided. But if we con-

cede that the expression in the complaint "which was worth the sum of $17,500, *and that he paid the said amount therefor*" be deemed sufficient statement of fact to constitute an issuable allegation of fraud, yet the result must be the same for the reasons following.

■ Another reason why the judgment should be sustained is the conduct of plaintiff herself in refusing to take advantage of the opportunity given her to prosecute her alleged claim against Lohmire. Plaintiff charges the defendants with gross negligence because they did not appear in the suit instituted by Schantin, the owner and holder of the first mortgage against the Washington County land, and prosecute her claim for rescission of the exchange against Lohmire, a defendant and a cross-complainant in the foreclosure suit. Lohmire having a second mortgage against the land was a necessary party to the Schantin suit: Or. L., § 423. Defendant Hare filed a demurrer to the foreclosure complaint. Plaintiff had no defense to the Schantin foreclosure. She does not now claim that she had any. Lohmire, in answer to the summons served upon him in that foreclosure suit, prepared and filed an answer and a complaint seeking to foreclose his mortgage against the plaintiff in the instant action, said mortgage being a second lien on the Washington County real property. To the foreclosure complaint of the said Lohmire, defendants Carter and Korell prepared and filed an answer alleging fraud on the part of Lohmire in consummating the exchange between him and the plaintiff herein, and demanded damages, but made no further appearance. When the foreclosure suit was called plaintiff neither appeared in person nor by her attorneys. After appropriate proceedings the court made its findings and entered its decree foreclosing the mortgage, execution

was issued and the land sold. Nearly nine months later the attorney for plaintiff in the foreclosure suit, the attorney for Lohmire and the attorneys who appeared in said suit for plaintiff in this action, learned that plaintiff was charging her attorneys, defendants herein, with having neglected her defense. They learned that she was claiming to have been defrauded by the negligence of defendants herein and had suffered heavy loss. Thereupon attorney for plaintiff in the foreclosure suit and said Lohmire and his client Lohmire joined with defendants herein in a stipulation that the former decree foreclosing the mortgages might be canceled and vacated and the case opened. The decree was vacated by order of the court. Plaintiff herein was notified of said order, both by defendant Hare and by the court, and the plaintiff herein was invited to appear and make her defense, if she had any. Opportunity was therefore given to plaintiff to make her defense to the foreclosure of Lohmire's mortgage and to have the controversy between her and Lohmire tried and determined. Plaintiff refused to appear and a decree was entered at a time set for the case to be heard for the second time.

Plaintiff contends here that the court was without authority to vacate the former decree since more than two terms of court had expired after the original decree had been rendered and entered. The court was authorized to relieve her from a decree and judgment entered against her by mistake, inadvertence, surprise or excusable neglect. Defendants here contend that they had no intention of appearing further after preparing her answer for her; that the demurrer filed by defendant Hare and the answer by the other two defendants were prepared and filed to give plaintiff herein time to secure the money in some

way in which to pay said mortgages. The judge of the Circuit Court for Washington County is not only an able jurist but a judge of long experience and he is very sensitive about the purity of the decree of his court. When the word came to him that plaintiff herein was claiming to have been misled and without representation at the time the decree was entered he had authority to vacate said decree and to open up the case, even though no motion had been made: Or. L., § 103. Opening the decree was made to benefit plaintiff herein. She argues here that said decree was opened for the benefit of defendants herein. If plaintiff had appeared in the foreclosure suit and made her case, and then lost as a result of not having appeared in the first trial and that loss was in consequence of the neglect of defendants, she would have a good cause of action against defendants, notwithstanding the reopening of the decree, but no one is permitted to lay by or to so conduct himself as to permit damages unnecessarily to accumulate against him and then compel someone else to pay the damages: *Read* v. *Patterson,* 79 Tenn. (11 Lea) 430, 438; *Martin* v. *Hood,* 203 Cal. 351 (264 Pac. 478, 481).

The alleged negligence of defendants was not the proximate cause of plaintiff's loss, if she sustained any loss. Their failure to appear at the first hearing of the foreclosure suit was not the direct cause of loss to plaintiff. After that plaintiff was given opportunity to fully present her case. If the answer they prepared was wrong she doubtless would have been permitted to amend. Her own neglect of her case after defendants withdrew from the case was the direct and immediate cause of losing the case by default.

"He (negligent attorney) was guilty of negligence for not collecting the money when he could have done it. But this negligence was not the proximate or natural occasion of the loss, for after this plaintiff himself might have collected the money." *Read* v. *Patterson,* above, p. 438.

Plaintiff would not necessarily have tried the foreclosure case on the answer filed for her by defendants Carter and Korell. The learned judge who vacated a valid decree because plaintiff was claiming that she was not given an opportunity to be heard doubtless would have permitted an amended answer to have been filed, if request had been seasonably made at the second trial. The able attorney for the plaintiff in the foreclosure suit by his conduct consenting to the cancellation of the original decree doubtless would have welcomed an advance by plaintiff herein to have made any defense she had to the foreclosure of Lohmire's mortgage. Both the court and the attorney for Lohmire as well as for plaintiff at the foreclosure suit manifested a disposition to afford plaintiff herein every opportunity to present her defense. It ill becomes plaintiff herein to say now that she was prevented from making a defense, or from presenting in the foreclosure suit any cause of suit she may have had against Lohmire, when the court and the attorney for Lohmire were even solicitous to afford her an opportunity so to do.

"The equitable power of the court to set aside judgments by default will be exercised to prevent an injustice to the client, about to result from his attorney's ignorance or carelessness, where there will be occasioned to the opposite party no practical harm other than that of compelling him to try the case on its merits." 6 C. J. 708, note 90.

In the foreclosure suit nobody could have been harmed by the cancellation of the decree and opening of the case, except the plaintiff Schantin and the defendant Lohmire. Both of them through their attorneys, consented to the action taken by the court for the protection of the plaintiff herein. When the original decree was canceled and vacated the case stood just as it did before that decree was rendered and immediately after the issues were framed. Courts are liberal in allowing amendments to pleadings before trial. Inasmuch as the original decree was set aside because the plaintiff herein complained that she was not represented at the trial, there should be no doubt in anyone's mind that plaintiff herein would have been permitted to file an amended answer in accordance with her ideas of her right of procedure against said Lohmire.

The question could plaintiff herein have maintained successfully a suit to rescind the exchange of properties between said Lohmire and plaintiff is pertinent. Plaintiff's assertion that she lost her right to rescind through defendants' alleged negligence occurs and reoccurs in plaintiff's presentation of the instant case. The answer filed by plaintiff herein in the foreclosure suit demanded damages. Could plaintiff recover damages for fraud committed by Lohmire inducing her to make the exchange of properties? Plaintiff relies on *Hanna* v. *Hope*, 86 Or. 303, 306, 310 (168 Pac. 618), as authority supporting her contention that she could not have recovered damages in the foreclosure suit. This court held to the contrary to plaintiff's contention in *Hanna* v. *Hope*, above. In that case the court directly holds that one induced by fraudulent representations to purchase real property may counterclaim the resulting damages in a suit to foreclose a mortgage given to secure a part of

the purchase price. Plaintiff Hanna instituted a suit to quiet his title to a tract of real property bought from defendant Hope. Hanna had given to Hope a mortgage to secure the payment of $15,000 of a total purchase price of $20,000. Hope answered seeking to foreclose the mortgage. In his reply and as a first affirmative reply and counterclaim to the answer Hanna set up facts sufficient to constitute fraud on the part of Hope. The contention was made in the Hanna case that he could not counterclaim in damages against the foreclosure of a purchase price mortgage. That is the exact contention of plaintiff in the instant case. But in the Hanna case the court used this language:

"The first affirmative reply alleges that the mortgage in question was a purchase-money mortgage and the purchase was induced by fraudulent representations of the Defendants Hope. The materiality of the representations, the intent to deceive and the reliance on the representations are sufficiently alleged. It has been repeatedly held in this jurisdiction that in such case the party defrauded has an election to return what he has received and rescind the contract of purchase or to retain what he has received and sue for damages: (authorities cited). Plaintiff must be deemed to have elected to pursue the latter remedy. In recoupment against the claim asserted by the defendants Hope he may set up the damages alleged to flow from their fraud in inducing the purchase for which the mortgage was given: *Caples* v. *Morgan,* 81 Or. 692, 696 (160 Pac. 1164, L. R. A. 1917B, 760); *Kreinberg* v. *Mathews,* 81 Or. 243 (159 Pac. 75)."

*Hanna* v. *Hope* has been frequently cited with approval by this court. The latest case citing with approval *Hanna* v. *Hope* is *Smith* v. *Aplanalp et al.,* 126 Or. 213, 217 (267 Pac. 1070), wherein is cited with approval *Yokota* v. *Lindsay et al.,* 116 Or. 641, 645

(242 Pac. 613). *Gabel* v. *Armstrong*, 88 Or. 84, 91 (171 Pac. 190), also supports the right of one defrauded in a land trade to counterclaim by way of damages in a suit to foreclose the purchase price mortgage. The court expresses the principle in this language:

"It is a well-established principle of equity jurisprudence that the mortgagor may defend against the foreclosure of a purchase-money mortgage on the ground of fraudulent representations inducing the purchase and that this defense is available where the right to rescind is waived and damages are claimed by way of recoupment: (authorities cited)." *Gabel* v. *Armstrong*, above, page 90.

It is true that in page 89 the learned justice, who wrote the opinion for the court, makes a distinction between counterclaim and recoupment, but the right to counterclaim for damages where the mortgagor was induced to purchase the land by fraud in a suit to foreclose the purchase price mortgage is too well established to be questioned now.

■■ Could plaintiff have successfully maintained a suit to rescind after the foreclosure proceedings were begun? In order to rescind on the grounds of fraud, the person defrauded must bring such suit without unnecessary delay. A suit to rescind must not only be instituted at an early date but the parties seeking to rescind by suit must also restore to the other party the property the defrauded received. Applied to the instant case as soon as plaintiff herein realized she had been cheated, if she wanted to rescind, she had two courses of procedure open to her; first, she could have rescinded and sued to have her property which she had conveyed to Lohmire returned to her, her note canceled and surrendered to her; second, she could have instituted a suit to rescind

and in such suit should have tendered a return of the property she had received in the exchange as well as demanded the property she had given therein. She could not retain the fruits of the exchange, deal with it as her own, and then later rescind. When she retained title to the property she had received and sought to deal with it as her own, she thereby ratified the exchange and waived all right to rescind. This court speaking through Mr. Justice ROBERT S. BEAN in *Scott* v. *Walton*, 32 Or. 460, 464 (52 Pac. 180), used this language:

"A party who has been induced to enter into a contract by fraud, has, upon its discovery, an election of remedies. He may either affirm the contract, or disaffirm it, and be reinstated in the position in which he was before it was consummated. These remedies, however, are not concurrent, but wholly inconsistent. The adoption of one is the exclusion of the other. If he desires to rescind, he must act promptly, and return or offer to return what he has received under the contract. He cannot retain the fruits of the contract awaiting future developments to determine whether it will be more profitable for him to affirm or disaffirm it. Any delay on his part, and especially his remaining in possession of the property received by him under the contract, and dealing with it as his own, will be evidence of his intention to abide by the contract."

This case and the excerpt quoted therefrom has been cited and quoted more frequently probably than any case decided by this court. It was cited with approval in *Larsen* v. *Chapin*, 125 Or. 7, 10 (265 Pac. 441); *Vaughn* v. *Smith*, 34 Or. 54, 57 (55 Pac. 99), and numerous cases decided between those two. Plaintiff alleges in her complaint that as soon as she discovered the character of the land she objected thereto but was restrained from rescinding by the

representations of Lohmire that he would sell the property for $17,500 in excess of the mortgages. It was almost two years after the exchange was made before the foreclosure suit was instituted. We are warranted by the rule for construing pleadings to assume that plaintiff discovered the nature of the Washington County property immediately after making the exchange. For nearly two years she retained the property, treating it as her own, permitting Lohmire to attempt to sell it for her at a price of $5,600 in excess of the amount she accepted the same in exchange for her Portland property. She accepted the Washington County property at a value of $17,500 subject to a mortgage to secure the sum of $3,600 and gave $2,000 additional, making the net value of the property $12,100. She exchanged property valued at $10,500 less $2,200 or a net value of $8,300. She deferred acting to rescind for the purpose of securing $17,500 net or double the amount she was giving. She now says that Lohmire, with whom she traded, further deceived her by promising to sell the Washington County property for $17,500 in excess of the two mortgages against it, aggregating the sum of $5,600. Plaintiff thereby treated that property as her own and could not after delaying for nearly two years rescind the exchange of properties with Lohmire. She was thereby limited to her action for damages as stated in the answer prepared by defendants Carter and Korell.

■ Another reason that the complaint of plaintiff does not state a cause of suit against defendants is that in the foreclosure suit plaintiff did nothing to rescind other than to offer in writing. Her contention is that an offer in writing to rescind was equivalent to a tender of performance. An offer to be effective must be performed. Plaintiff could have

kept her alleged offer alive by executing a deed conveying the Washington County land to Lohmire. A tender of money in order to be potent must be kept good by bringing the money into court with a pleading on which the party making the tender relies. It is not sufficient compliance with the statute to merely offer in writing to do a thing and then do nothing more. An offer in writing to take the place of a legal tender must be made and kept alive in a similar manner as a tender of payment, that is, by performance of the offer at the proper time.

"I think it is intended by the former (Or. L., § 574) provision of the statute that in order to make the tender effectual, the money has to be brought into court and deposited with the clerk, and the latter provision (Or. L., § 875) simply dispenses with the necessity of actually producing and offering the money in the outset." *Holladay* v. *Holladay,* 13 Or. 523, 536 (19 Pac. 81).

*McCourt* v. *Johns,* 33 Or. 561, 565 (53 Pac. 601); *Crawford* v. *O'Connell,* 39 Or. 153 (54 Pac. 656); *Short* v. *Rogue River Irr. Co.,* 82 Or. 662, 673 (162 Pac. 845); *Ladd & Tilton* v. *Mason,* 10 Or. 308, 314.

In discussing these cases we have treated plaintiff's complaint as true. It is only fair to defendants to add that they deny all the allegations and inferences of negligence. The court does not express any opinion upon the facts. Accepting at their full legal value all of the allegations and charges in the complaint it does not state facts sufficient to entitle plaintiff to recover.

Judgment is affirmed.

AFFIRMED. REHEARING DENIED.

BELT, J., concurs in the result.

BROWN, J., absent.

ROSSMAN, J.—The sufficiency of the complaint can be determined only from its own recitals. Speaking demurrers are unknown to our practice; unless the complaint in this suit can be aided by matters foreign to it it must be held sufficient.

For these reasons I cannot subscribe to any conclusion that the complaint is insufficient to state a cause of action. Nevertheless I believe that the judgment on the pleadings entered by the Circuit Court was proper. I therefore concur in the result reached by the majority.