Argued April 16; reversed June 9; rehearing denied June 30, 1942

## SHEPPARD *v.* BLITZ ET AL.
## MENEFEE *v.* BLITZ ET AL.
(126 P. (2d) 509)

Before KELLY, Chief Justice, and BAILEY, LUSK, RAND and ROSSMAN, Associate Justices.

692

*Arthur A. Goldsmith*, of Portland, for appellants.

*Chester A. Sheppard*, of Portland (Sheppard & Phillips, of Portland, on the brief), for respondents.

KELLY, C. J. Sometime during the year 1936, the late A. I. Blitz "had acquired the sole and exclusive right, privilege and option to drill, mine and extract" from certain properties consisting of 1240 acres situated in what is known as "Devil's Den", Kern county, California, all oils, gas and gasoline and other hydrocarbons contained in said properties.

Thereafter, said A. I. Blitz, entered into an agreement of trust with one Edward D. Ulrich and one J. L. Keck with a view of developing said properties. Said agreement or declaration consists of five and a half pages of single spaced typewriting, and the terms and

conditions under which said properties were held in trust by Mr. Blitz are set forth in ten paragraphs thereof.

The tenth paragraph is as follows:

"Tenth: It is the understanding that this trust will continue in effect for the life of the said trustee, Arnold I. Blitz, and for twenty-one years thereafter, unless sooner terminated under the terms hereof. At the date of termination the trust properties may be distributed in kind to the various beneficiaries pro rata, or the same may be distributed by transferring the trust properties to a corporation for its stock and cause the stock to be issued pro rata to the beneficiaries. Any action may be taken in the management, disposal, or operation of this trust, either at the time of the termination of this trust or prior thereto, and as to any portion thereof which may be agreed upon by the holders of a majority in amount of the beneficial interests outstanding and majority of the holders of the beneficial interest. This provision, however, shall not limit any authority reserved to the trustee or his successors under the terms hereof."

The seventh paragraph is as follows:

"Seventh: The Trustee may be removed at any time by the holders of two-thirds of the beneficial interest outstanding and any vacancy in the Trusteeship caused by the removal, resignation, demise or incapacity of the Trustee or any successor, shall be filled by such party as shall be named by the holders of two-thirds of the beneficial interest, and if this two-thirds shall fail to act for a period of thirty (30) days, such new Trustee shall be appointed by a Judge of the United States District Court for the District of Oregon."

A. I. Blitz, referred to in the foregoing tenth paragraph as Arnold I. Blitz, died on the 20th day of March, 1940; and on May 27, 1940, Enid R. Blitz, executrix of his estate, was substituted as party defendant in

place and stead of A. I. Blitz. There is nothing in the record indicating that a duly appointed trustee was substituted in the place and stead of A. I. Blitz as trustee.

The relief sought by plaintiff Sheppard is as follows:

(1) A decree rescinding and cancelling an agreement entered into under date of July 1, 1937, by plaintiff Sheppard as party of the first part, and Arnold I. Blitz, both in his individual capacity and as trustee.

Among other things, this agreement of July 1, 1937, so sought to be rescinded, recites that plaintiff Sheppard has paid to the second party [Blitz] $5,000 in cash; and said second party agrees that all of said sum of money shall be devoted to the completion of an oil well upon eighty acres of the trust property, which eighty acres was transferred to a corporation known to the record as Bell Oil & Gas Company and said second party further agrees that he will issue or cause to be issued 20,000 shares of the capital stock of said corporation to plaintiff Sheppard all at the rate of twenty-five cents per share, and all fully paid and nonassessable.

It is also stipulated in said agreement that the second party will sell, assign and transfer to plaintiff Sheppard two per cent in trust property owned and held by him, in full payment for which plaintiff Sheppard agrees to sell and transfer to the second party 4,000 shares of common stock of the Euphrates Mining Company, Limited.

Instead of $5,000 in cash being paid by plaintiff Sheppard as in said agreement set forth, he delivered a first mortgage bond of the Portland Gasoline Company, hence as a further phase of the relief sought by

plaintiff Sheppard, (2) he prays for a judgment and decree for the return of said $5,000 first mortgage bond, and in the event defendant has disposed of it, for judgment against defendant in said sum. Plaintiff Sheppard also prays (3) for judgment for $2,500 paid by said plaintiff on the 2nd day of September, 1937, for additional stock in said Bell Oil & Gas Company; and also (4) for a decree requiring defendant to return to plaintiff [Sheppard] the said 4,000 shares of common stock of the Euphrates Mining Company, Limited.

Plaintiff, Menefee, seeks (1) a decree rescinding and cancelling his subscription and his purchase of stock in said Bell Oil & Gas Company in the sum of $5,000, which subscription and purchase was made on or about July 1, 1937; and plaintiff Menefee also seeks (2) to recover judgment against defendant in the sum of $5,000 together with interest thereon at the rate of six per cent per annum from July 1, 1937.

At the outset, we are confronted with the contention that the Bell Oil & Gas Company is a necessary party to a suit to rescind and cancel the issuance of its capital stock.

██ We are not unmindful that the court should regard the substance and not the form of a fraudulent scheme involving the organization of a corporation, not for the purposes claimed by its organizers, but merely as a means to defraud; but there is neither allegation nor proof of such a state of facts with respect to the Bell Oil & Gas Company.

On the contrary, it is alleged in the amended complaints that the stock so sold to plaintiffs was all original capital stock of said Bell Oil & Gas Company, and not stock belonging to said defendant, either individually or as trustee.

■ The necessity of a substitution of a living trustee for the late Mr. Blitz has not been suggested by counsel. In this case, however, where there is the provision, above quoted, for selecting a successor to Mr. Blitz, which provision is specifically set forth in the trust agreement, the writer is unable to understand how an effective decree of cancellation and rescission of a contract, to which a trustee, now deceased, was a necessary party, can be made unless a substitution has been made of the succeeding trustee duly appointed in accordance with the terms of the trust agreement.

■ Bearing in mind that the declaration of trust, from which we have quoted, is an exhibit attached to and made a part of plaintiffs' complaints, it cannot be said plaintiffs were unaware of the provision with respect to procedure which should be taken to secure the appointment of a successor to Mr. Blitz upon his demise.

"By the trust instrument it may be provided that in case of a vacancy certain persons shall have the power to fill the vacancy by appointing a trustee. Such provisions are, of course, valid, * * * * *." Vol. 1, Scott on Trusts, p. 569, § 108.3; Vol. 3, Bogert on Trusts and Trustees, p. 1691, § 532, Vol. 1, Restatement of the Law, Subject: Trusts, p. 283, § 108, clause (b).

It is equally obvious that the trusteeship would be materially affected by requiring a return of the 4,000 shares of stock in the Euphrates Mining Company, Limited.

Granting, only for the purpose of discussion, that plaintiff Sheppard should prevail upon his claim concerning the last named stock, it is apparent that no judgment should be rendered against defendant herein upon that claim until plaintiff Sheppard has exhausted his remedy against the trusteeship.

This leads to the conclusion that there is such a serious defect of parties defendant that the decree of the trial court cannot be upheld.

■ This is not in contravention of the principle, that, if a litigant stands by and permits a case to be tried as a suit in equity without interposing an objection to the effect that it is merely an action at law, such litigant will not be heard upon appeal to urge the question. It is not a case where defendants have failed to raise the question of a defect in parties plaintiff. It is a case where material and necessary parties defendant are not before us, and a decree adversely affecting their rights in the manner sought by plaintiffs could not be enforced.

We give heed to the facts, as stated, that both plaintiffs and defendant have treated these cases as suits in equity, but realize that upon their return to the trial court, the parties might take recourse in actions at law, [section 9-102, Vol. 2, O. C. L. A. p. 9, at p. 10] in which event a trial or trials by jury could be had. For this reason, we refrain from expressing our views upon the evidence before us. We have no inclination to influence the subsequent triers of the facts in their analysis and appraisal of the testimony, especially, if the cases are ultimately resolved into actions at law.

The decrees of the trial court are reversed and the cases remanded for such further proceeding as may not be inconsistent herewith.