Argued October 16; affirmed November 14;
rehearing denied December 12, 1945.

# SHEPPARD *v.* BLITZ

(163 P. (2d) 519)

*Arthur A. Goldsmith,* or Portland, for appellant.

*Wendell K. Phillips,* of Portland (Sheppard & Phillips, of Portland, on the brief), for respondent.

BAILEY, J. In February, 1938, Chester A. Sheppard instituted a suit in the circuit court for Multnomah county against A. I. Blitz, individually, and A. I. Blitz, trustee, for a decree rescinding and canceling a contract entered into between him and A. I. Blitz, individually and as trustee; canceling an agreement signed by him for the purchase of stock in a corporation to be thereafter organized, and for other relief. The amended complaint, on which the cause was tried, alleged that the plaintiff had been induced by the false and fraudulent representations of A. I. Blitz to enter into the contracts which he sought to have canceled.

Before the suit came on for trial, and on the 20th day of March, 1940, A. I. Blitz died, and thereafter his widow, Enid R. Blitz, executrix of his estate, was sub-

stituted for him individually as party defendant. No substitution was made for A. I. Blitz, trustee.

At the conclusion of the trial of the case, the circuit court entered a decree in accordance with the prayer of the amended complaint, and from that decree defendant Enid R. Blitz, executrix of the estate of A. I. Blitz, deceased, appealed. This court reversed the decree, on the ground that there was a defect of parties defendant, and remanded the cause for further proceedings not inconsistent with its opinion. *Sheppard v. Blitz*, 168 Or. 691, 126 P. (2d) 509.

After the entry of the mandate of this court, Sheppard, with the permission of the circuit court, filed a second amended complaint in which he sought to affirm the contracts, which he had previously attempted to have canceled, and to recover from Enid R. Blitz, executrix of the estate of A. I. Blitz, deceased, damages resulting to him from certain alleged false and fraudulent representations of A. I. Blitz, by which he was induced to enter into those contracts. Thereafter, with the permission of the court, plaintiff filed his third amended complaint, wherein the identical alleged false and fraudulent representations of Blitz, on which Sheppard relied in the suit for cancellation of the contracts, are set forth as the basis for his recovery of damages.

In defendant's answer to the third amended complaint she denied that her decedent had made the false and fraudulent representations charged against him, and in an affirmative defense she set forth the facts relating to the institution of the suit by plaintiff in the circuit court for the cancellation of the contracts hereinbefore referred to, the trial of the suit and the entry of a decree therein canceling and rescinding those contracts, and the reversal of the decree therein by the

supreme court. It is then alleged that, by reason of those facts, plaintiff had elected "as his remedy a rescission and disaffirmance of the transactions set forth in plaintiff's third amended complaint and is barred from proceeding in an action at law for damages arising therefrom, and based upon an affirmance thereof, said remedy being wholly inconsistent with the remedy previously elected by plaintiff."

The jury, which heard the evidence, returned a verdict for $7500 in favor of the plaintiff. From the judgment entered thereon, defendant has appealed.

Defendant asserts that the institution of the suit by plaintiff for the rescission of the contracts hereinbefore referred to, with full knowledge of the facts, barred him from thereafter bringing an action for damages. In support of this contention she relies on the following cases: *Scott v. Walton*, 32 Or. 460, 52 P. 180; *Robinson v. Cable*, 109 Or. 579, 217 P. 624; *Rehfield v. Winters*, 62 Or. 299, 125 P. 289; *Yokota v. Lindsay*, 116 Or. 641, 242 P. 613; *Milton v. Hare*, 130 Or. 590, 280 P. 511; *United States v. Oregon Lumber Company*, 260 U. S. 290, 67 L. Ed. 261, 43 S. Ct. 100. She also cites, in addition to those cases, 28 C. J. S., § 6, p. 1070.

■ *Scott v. Walton*, supra, was a suit for the cancellation of a deed on the ground of fraud. Relief was denied the plaintiff because of his delay in bringing suit after discovery of the fraud. Mr. Justice Robert S. Bean, in rendering the decision of the court, laid down the following well-recognized rule of law:

"A party who has been induced to enter into a contract by fraud, has, upon its discovery, an election of remedies. He may either affirm the contract, and sue for damages, or disaffirm it, and be reinstated in the position in which he was before it

was consummated. These remedies, however, are not concurrent, but wholly inconsistent. The adoption of one is the exclusion of the other.''

The foregoing excerpt has been quoted many times with approval by this court and has been applied in numerous instances in suits for rescission. The opinion continues:

"If he desires to rescind, he must act promptly, and return or offer to return what he has received under the contract. He cannot retain the fruits of the contract awaiting future developments to determine whether it will be more profitable for him to affirm or disaffirm it. Any delay on his part, and especially his remaining in possession of the property received by him under the contract, and dealing with it as his own, will be evidence of his intention to abide by the contract.''

What the court was referring to in the last above-quoted excerpt was not a choice of remedies but, in reality, a choice of substantive rights. *Schenck v. State Line Telephone Company,* 238 N. Y. 308, 144 N. E. 592, 35 A. L. R. 1149.

In *Robinson v. Cable,* supra, the court held that the decree in a former suit was a final adjudication of all the matters at issue in that suit, "and as the present suit presents no issue not determined in the former suit, the matters alleged in the complaint are merged in the former decree.'' In the course of the opinion, the court, after referring to the rule announced in *Scott v. Walton,* supra, proceeded as follows: "By her former suit she elected to disaffirm the contract and recover back the money she had expended. She now seeks to affirm the contract and sue for damages. The commencement of the former suit, *carried, as it was, to a successful termination,* was an irrevocable election of remedies upon

her part, and precludes her from maintaining her present suit.'' (Emphasis supplied).

*Rehfield v. Winters,* supra, was an action at law for damages based on the false representations of the defendant. It appears that prior to the institution of this action the plaintiff had instituted a suit for the rescission of the contract of sale of the property involved in the action at law, and that during the trial of the equity suit the defendant contended that such remedy was not available to plaintiff. In this contention he was upheld by the trial court, and thereupon plaintiff took a nonsuit. This court observed that since the defendant had obtained such ruling, he ''cannot now well claim that it was erroneous'', and held that the institution of that suit did not bar him from bringing an action at law for damages.

In *Yokota v. Lindsay,* supra, plaintiff, instituted a suit to foreclose a mortgage. The court, after referring to the rule announced in *Scott v. Walton,* supra, stated that a defrauded party had the right in a suit in equity for the foreclosure of a mortgage given to secure the purchase price to ''set up the damages sustained by way of a recoupment, or equitable defense''. It was held, however, that the defendants had failed to prove any misrepresentation.

The case of *Milton v. Hare,* supra, was an action by a dissatisfied client against her attorneys for damages for their alleged failure to properly represent her in a mortgage foreclosure proceeding. It was held that the plaintiff had, after discovering the fraud, affirmed the contract by dealing with the property as her own.

In *United States v. Oregon Lumber Company,* supra, the United States brought an action at law against the

defendants to recover damages for the fraudulent acquisition of certain government lands. It appears from the facts stated in the opinion that prior to the institution of this action the United States had brought a suit for the rescission of patents issued by it for the same lands to the successors in interest of the Oregon Lumber Company. To this suit the defendants interposed the statute of limitations. The trial court found that the United States was barred by the statute of limitations and dismissed the suit. Thereupon the plaintiff brought an action at law for damages. In ruling that the government was barred from maintaining its action at law because of the previous suit in equity, the opinion of the majority of the court said:

> "But here in the equity suit, the plaintiff in error upon the coming in of the defendant's plea of the statute of limitations made no offer to amend or request to transfer the case to the law docket, but proceeded to trial and judgment upon the original bill, with knowledge of all the facts for more than six years prior to the filing of its bill. Defeated in its equity suit, it brought its action at law upon the same allegations of fact. We think it is not admissible to thus speculate upon the action of the court, and, having met with an adverse decision, to again vex the defendant with another and inconsistent action upon the same facts."

In a strong dissenting opinion by Mr. Justice Brandeis, in which Chief Justice Taft and Justice Holmes concurred, it is pointed out that the government did not have two remedies at the time of the institution of the suit in equity, inasmuch as the statute of limitations barred the granting of equitable relief. It is further stated that there had been no adjudication of the government's substantive right, since the only thing adjudged in the equity case was that the government

had discovered the fraud more than six years before the commencement of the suit. The dissenting opinion contains this pertinent statement:

"The doctrine of election of remedies is not a rule of substantive law. It is a rule of procedure or judicial administration. It is technical; and, as applied in some jurisdictions, has often sacrificed substantial right to supposed legal consistency. The doctrine has often been invoked in this Court, but never before successfully. Its existence has been recognized; but in every case in which the question presented was actually one of election of remedies, this Court held that the doctrine did not apply; giving as a reason that one or the other of its essential elements was absent. These essentials are that the party must have actually had two remedies and that the remedy in question must be inconsistent with the other previously invoked. Here neither of these essential elements was present."

In none of the Oregon cases relied upon by the defendant are the facts similar to those presented here. Equitable relief to the defrauded party was denied, in most of those cases, because he had waived his right to rescind by treating the contract as valid after discovering the fraud. Our attention has not been called to any Oregon case, and we have been unable to find one, which denied to plaintiff the right to maintain an action at law for damages for fraud because he had previously instituted a suit for rescission, in which there had been no final adjudication.

There is this difference between the Oregon Lumber Company case and the case at bar: In that case the equity suit had proceeded to a final determination before the institution of the law action, while in the instant case there was no final adjudication of the suit in equity. We are not required to determine whether,

upon like facts, we would follow the majority opinion in the Oregon Lumber Company case. It concedes that a different result would have been reached if the plaintiff had not prosecuted the suit to final determination after being warned of the defense of the statute of limitations.

■ Restatement of the Law of Restitution, § 68, subsection (2), page 275, sets forth the essential elements of the avoidance of a transaction, as follows:

"(2) A person who avoids a transaction is not entitled subsequently to affirm the transaction, unless the avoidance was induced by the fraud, material misrepresentation or duress of the transferee. A person does not avoid a transaction until:

(a) he has regained all or a substantial part of what he gave and to which he would be entitled only upon avoidance, or

(b) he has obtained a final judgment or decree based upon the avoidance, or

(c) the other party has changed his position in reliance upon a statement of disaffirmance or has manifested his consent thereto."

On page 282, under the heading, "Comment on Subsection (2)" we find the following explanation of that subsection:

"A manifestation of an affirmance of a voidable transaction made freely and without mistake cannot be rescinded; a manifestation of a disaffirmance, however, does not of itself operate as an avoidance. Thus a statement that one disaffirms, or ineffectual attempts to obtain what has been given, are not conclusive. Likewise, bringing a proceeding for restitution which, for any reason, is unsuccessful, does not prevent further proceedings or further action based upon the validity of the transaction. There is no definitive avoidance until the person seeking to

avoid has regained all or part of what he gave, has obtained a judgment or decree by the enforcement of which he will be put back into his original position, has caused the other party to change his position in reliance upon the avoidance, or has contracted with the other party upon the basis of this disaffirmance. * * * ''

There is a very clear and concise statement of the ''Distinction between action for rescission and in affirmation of contract'' found under that heading, in the annotations in 35 A. L. R., at page 1154. Because of its application to the question before us, we quote it:

''There is a distinction in this connection between bringing an action to rescind, and bringing an action for damages for the fraud. In a rescission action, rescission is not accomplished as a fact until either acquiesced in by the other party or established by the judgment or decree of a court of competent jurisdiction. The right to waive fraud, however, rests entirely with the defrauded party. It does not require the consent of the wrongdoer, and it need not be established by the judgment or decree of any court.''

See also the cases following the above quotation; Annot. 123 A. L. R. 378; *Beers v. Atlas Assurance Company, Ltd.,* 231 Wis. 361, 285 N. W. 794, 123 A. L. R. 372; *Dean v. Cole,* 103 Or. 570, 578, 204 P. 952.

Prior to bringing the present action for damages, the plaintiff had attempted to rescind the two contracts which he claimed he had been induced to enter into by the misrepresentations of Blitz. The latter, however, refused to acquiesce in their rescission. Thereupon, Sheppard instituted a suit for the cancellation and rescission of the contracts. During his lifetime, Blitz, and after his death the executrix of his estate, strenuously resisted the granting of any relief to plain-

tiff. After the decree of the circuit court had been entered in accordance with the prayer of the plaintiff's complaint, the executrix appealed to this court. One of the grounds assigned in her brief for reversal of the decree was that Sheppard had affirmed the contracts after acquiring knowledge of the fraud, and therefore was not entitled to equitable relief.

■ The only matter finally adjudicated in the equity suit was that the relief therein sought could not be granted without other parties being joined as defendants. It was decided in the circuit court that Blitz had made the misrepresentations with which he was charged. When, however, this court reversed the decree of that court on the sole ground that there was a defect of parties defendant, it left undetermined all the other matters involved in that litigation. 5 C. J. S., Appeal and Error, § 1950, page 1476.

■ To hold, under the facts presented by the record before us, that there had been an irrevocable election of remedies by plaintiff because of the prosecution of the suit in equity, would not be in accordance with the better-reasoned, modern pronouncements on the subject. We are concerned here with procedure, which is the "means whereby the court reaches out to restore rights and remedy wrongs; it must never become more important than the purpose which it seeks to accomplish." *Clark v. Kirby,* 243 N. Y. 295, 153 N. E. 79. In our opinion the plaintiff was not barred from maintaining this action for the recovery of damages.

■ The defendant asserts that there was a fatal defect of parties defendant for the reason that no substitute for A. I. Blitz, trustee, was joined as defendant in this action. In this connection it is pointed out that one of the contracts, into which the plaintiff claims he was

induced to enter, was executed by A. I. Blitz, individually, and A. I. Blitz, trustee. The misrepresentations on which plaintiff relies for recovery are alleged to have been made by A. I. Blitz, individually and not as trustee. This is a tort action based on fraudulent representations, and if more than one person was involved in the perpetration of the fraud, plaintiff could sue the wrong-doers either jointly or severally. *Murray v. Lamb,* 168 Or. 596, 115 P. (2d) 336, 124 P. (2d) 531.

It is further contended by defendant that plaintiff has failed to prove that he has been damaged. The complaint alleges that plaintiff was induced by the misrepresentations of Blitz to pay to the latter $7500 for stock in the Bell Oil & Gas Company, an Oregon corporation. No evidence was introduced, according to defendant, of the value of this stock at the time of its purchase by plaintiff. She argues that plaintiff's damage would be the difference between the amount of money which he paid for the stock and the value of the stock at the time of its purchase, citing *Howard v. Merrick,* 145 Or. 573, 27 P. (2d) 891.

In order to determine whether there was any evidence of the value of the corporate stock at the time of its purchase, it is necessary that all the evidence introduced in the circuit court on that subject be presented to us. The certificate of the trial judge to the bill of exceptions reads as follows:

"The foregoing Bill of Exceptions, together with the exhibits attached hereto and made a part hereof, were properly introduced and were admitted in evidence in the trial of the above entitled case. Excerpts from the transcript of testimony in the prior case of Chester Sheppard v. Enid R. Blitz, Executrix, and A. I. Blitz, Trustee, attached hereto and made a part hereof were read into the record

or referred to. In addition there are attached hereto the instructions given by the court and those tendered by the defendant, and there is also attached hereto and made a part hereof the judgment roll in the said first case between Sheppard and 'Enid R. Blitz, Executrix, and A. I. Blitz, Trustee, and the same is hereby certified as part of the Bill of Exceptions in this case.

"The foregoing Bill of Exceptions, including the material referred to in the foregoing paragraph, contains all the evidence introduced at the trial of this cause necessary for the disposition of the issues set forth in said Bill of Exceptions, and correctly shows the various proceedings during the trial as well as subesquent thereto relating to said issues.

"The same being true and correct, it is accordingly settled and allowed as a true Bill of Exceptions in this case."

■ The transcript of testimony in the prior case of Sheppard v. Blitz, consisting of two volumes of 667 pages, was filed with the foregoing bill of exceptions in this court. These two volumes do not appear to have been introduced as exhibits in the circuit court, and we assume, from the language of the certificate of the trial judge, that only excerpts therefrom "were read into the record or referred to." What excerpts from that transcript "were read into the record or referred to" we are not told. None of the testimony taken on the trial of this case is properly before us. We have no means whatever of knowing what testimony taken in the equity suit was read into the record in the case now under consideration. For that reason we will ignore entirely the transcript of testimony in that case. Our review is limited to the record made in the trial court. If the appellant desired that certain parts of the testimony taken in the former trial be considered by this

court, she should have had such testimony properly identified in the bill of exceptions.

■ In view of the record before us, we must assume that there was sufficient evidence to support the verdict of the jury. We must likewise assume that there was no material misstatement of the evidence by Mr. Sheppard in his argument to the jury.

We find no error in the judgment appealed from, and it is therefore affirmed.