Argued December 3, 1925, reversed January 12, 1926.

Y. YOKOTA *v.* A. C. LINDSAY ET AL.

(242 Pac. 613.)

Contracts—Contract Entered into Because of False and Fraudulent Representations is not Void, but Voidable.

1. Where one has been induced to enter into a contract by false and fraudulent representations, contract is not void, but voidable, and injured party may either affirm or disaffirm it.

116 Or.—41

**Fraud—One may Keep What He has Received Under Contract and Sue for Damages.**

2.  If one induced to enter into contract by false representations elects to affirm contract, he may keep what he has received under it, and bring action to recover damages sustained, or recover them by counterclaim in action for price, or recoupment in suit to foreclose purchase-money mortgage.

**Contracts—Rescission must be Prompt.**

3.  One induced to enter into contract by false and fraudulent representations may elect to disaffirm and make restitution of what he has received thereunder, and he is then permitted to recover back what he has parted with, but he must act with reasonable promptness.

**Election of Remedies—Adoption of Remedy for Fraud Precludes Other Remedy.**

4.  Adoption of remedy of affirming or disaffirming contract induced by false and fraudulent representations precludes recovery under other remedy.

**Contracts — Fraud must be Established by Clear and Convincing Testimony.**

5.  Since fraud is never presumed, it is incumbent upon one alleging that contract sued on was induced by false and fraudulent representations and asking cancellation to establish truth of allegations by clear and convincing testimony.

**Chattel Mortgages—Fraudulent Representations Held not Sustained by Proof.**

6.  In suit to foreclose purchase-money chattel mortgage, where defendant alleged false and fraudulent representations in sale of apartment house furniture and asked cancellation, findings for defendants *held* not supported by evidence.

**Appeal and Error—Findings of Trial Court in Equity Suit are not Binding on Appeal.**

7.  Under Section 556, Or. L., findings of trial court in an equity suit are not binding on appeal, and case will be tried *de novo*.

---

Appeal and Error, 4 C. J., p. 897, n. 81, p. 1191, n. 27.
Chattel Mortgages, 11 C. J., p. 721, n. 48, p. 726, n. 46, p. 729, n. 9.
Contracts, 13 C. J., p. 394, n. 12, p. 395, n. 23, p. 611, n. 95, 5, p. 616, n. 99, p. 621, n. 63, p. 624, n. 4.
Fraud, 27 C. J., p. 28, n. 50, p. 44, n. 57, p. 64, n. 90, p. 69, n. 26.
Sales, 35 Cyc., p. 539, n. 60.

From Multnomah: W. N. GATENS, Judge.

---

3.  See 4 R. C. L. 515.

Department 1.

REVERSED.

For appellants there was a brief over the name of *Messrs. Malarkey, Seabrook & Dibble,* with an oral argument by *Mr. Dan J. Malarkey.*

For respondents there was a brief over the name of *Messrs. Motter & Barrett,* with an oral argument by *Mr. Leslie E. Crouch.*

RAND, J.—On April 3, 1922, plaintiff sold and delivered to defendants the furniture and household goods then in use in the Orderleigh Apartment House in the City of Portland, together with the goodwill of the business. The purchase price finally agreed upon was fourteen thousand five hundred dollars ($14,500), of which defendants paid thirty-seven hundred fifty dollars ($3750), and gave their promissory note, secured by a chattel mortgage on the chattels purchased, for ten thousand seven hundred fifty dollars ($10,750). By its terms, the note bore interest at 7 per cent per annum, was payable in monthly installments of $250 and accrued interest, and contained an acceleration clause which provided that upon default in the payment of any installment, the whole amount of the note should become immediately due and collectible. No payments having been made thereon, on July 13, 1922, plaintiff commenced this suit to foreclose the mortgage. By their answer, defendants admitted the execution and delivery of the note and mortgage, but alleged that they had been induced to make said purchase, and to execute and deliver said note and mortgage by false and fraudulent representations, and that they had suffered damage by said

misrepresentations, in an amount equal to the amount for which the note had been given. The fraud charged was alleged misrepresentations as to the number of articles of furniture, the serviceable condition of the same, and the amount of net profits which plaintiff had been and at the time was making in the conduct of the business. The particular form of relief prayed for by defendants was that the note and mortgage "be canceled and annulled and that plaintiff's suit be dismissed" and a prayer for general relief. These allegations of fraud were all denied by the reply. Upon the trial of the cause, a decree was entered, denying any relief to plaintiff, and dismissing the suit.

1-4. The legal questions involved upon this appeal are well settled. Where one has been induced to enter into a contract by false and fraudulent representations, the contract is not void, but voidable. In such case, the injured party may either affirm, or disaffirm the contract, and if he elects to affirm the contract, he may keep what he has received under it and bring an action to recover the damages which he has sustained by reason of the fraud. But, if he elects to disaffirm the contract, he must rescind the contract, make restitution of what he has received under it, and is then permitted to recover back what he has parted with. To avail himself of this latter remedy, he must act with reasonable promptness. These two remedies are alternative remedies, but they are not concurrent; they are wholly inconsistent with each other, and the adoption of one precludes a recovery under the other. In pursuing either of these remedies, the injured party is himself the actor. But it often happens that a party who has been induced to pur-

chase property by fraud has not paid the purchase price, and an action or suit is brought against him to recover the same. In such case, if sued at law, he can set forth his damages by way of a counterclaim, and thereby prevent a recovery to the extent of the damage sustained. But, if sued in equity for a foreclosure of a mortgage given to secure the purchase price, he may in such suit set up the damages sustained by way of a recoupment, or equitable defense, although the damages are unliquidated, and when the damages are ascertained, obtain an abatement of the amount due under the mortgage, to the extent of the damage sustained, provided, that the amount of the damage does not exceed the amount due under the mortgage. This latter principle is well settled in this state by *Gabel* v. *Armstrong,* 88 Or. 84, 90, 91 (171 Pac. 190); *Kreinbring* v. *Mathews,* 81 Or. 243 (159 Pac. 75); *Hanna* v. *Hope,* 86 Or. 303 (168 Pac. 518, 519), where it was in effect held, that in a purchase price mortgage foreclosure suit, the defendant may avail himself, by way of recoupment, or equitable defense, of a fraudulent representation, by showing that the goods sold were worth less than they would have been if they were such as they were represented to be and thereby obtain an abatement of plaintiff's demand, to the extent of the damage the defendant sustained therefrom. It seems to be settled that in this state the measure of damge is the difference between the amount paid, or contracted to be paid, and the value of the goods bought; or, if there has been an exchange of property, then the value of what the injured party parted with, less the value of what he received.

The specific allegations of fraud set forth in the answer are, that plaintiff

"represented to these defendants that all of the furniture and equipment in said rooming house was in good order and condition and that the net income therefrom was not less than $500 per month, and that the tenants therein were good, responsible, law abiding people, and that there were a waiting list of persons desiring to become tenants in said rooming house, and that relying upon said representations to be true the defendant, A. C. Lindsay, was shown two apartments in said rooming house, the plaintiff representing that the balance of the apartments were approximately the same as the two shown and that he could not show the balance for the reason that he had no keys thereto; the defendant, Emma Estes not examining the same, she being sick and confined to her home at the time."

Following these are allegations to the effect that said representations were false and untrue, and were knowingly made for the purpose of deceiving and defrauding defendants. That defendants had no knowledge of their falsity; that the apartments not shown to Lindsay contained old, worn-out and broken furniture, fixtures and equipment, were in a dirty and filthy condition, were inhabited by bootleggers and sporting women and persons who caroused around during the day and late at night. That the net income of the apartments did not exceed the sum of one hundred twenty-five dollars ($125) per month. That there was no waiting list and that plaintiff removed furniture from the apartments of the value of one hundred twenty-five dollars, without defendants' knowledge. That defendants relied upon said representations and were induced thereby to purchase the chattels, and to pay

forty-two hundred fifty dollars ($4250) in cash, and to execute the note and mortgage sought to be foreclosed, and that by reason of the misrepresentations, defendants had been damaged in the sum of ten thousand seven hundred fifty dollars ($10,-750).

5, 6. As heretofore stated, all of the allegations of fraud were denied by the reply. Since fraud is never presumed, it was incumbent upon the defendants to establish the truth of the allegations by clear, satisfactory and convincing testimony. To entitle the defendants to relief, the particular fraudulent acts relied upon must be alleged, and as alleged must be established by proof upon the trial; we can find no such proof in the record before us. On the contrary, the evidence establishes that defendants knew, or by the exercise of reasonable diligence upon their part would have known, everything in relation to the truth or falsity of the alleged representations. In fact the record of evidence discloses no convincing proof of the fact that the alleged representations were made, or that if made, they were untrue. On the contrary, it is apparent from the record that the defendants are merely dissatisfied with their bargain and are seeking to be released from the obligations they assumed, without any justification therefor. By their duly verified answer the defendants unequivocally allege that before purchasing the property they were not permitted to go into or inspect and examine the furniture and equipment in any of the apartments but two. The chattel mortgage given contains a complete inventory and list of all of the furniture and equipment in each of the thirty-four apartments of the Orderleigh Apartment House. The defendant

Lindsay on the trial testified, that while this list was being prepared he was personally present in all of the apartments but three. From this testimony, it is apparent that he had ample opportunity to examine the condition of all of the property then being listed, except in three of the apartments. The contradiction of these allegations by the testimony of the defendant showing them to be untrue does not convince us that in seeking equitable relief the defendants were acting in entire good faith. Again, the defendants admit that the purchase price first agreed upon was fifteen thousand dollars ($15,000), and that because a part of the furniture was out of repair, a deduction on the purchase price of five hundred dollars ($500) was made in order to enable the defendants to have the same repaired and made serviceable. It further appears that these negotiations were pending for several weeks. That after the papers had been executed, the contract fully agreed upon, and before any money had been paid thereon, they were placed in escrow in a Portland bank, where for some days they remained, awaiting the execution in San Francisco of a lease by the owner of the apartment house premises, and that the money was not paid until the lease had been executed and turned over to the bank for delivery to defendants. There was some testimony tending to show that the value of the furniture and equipment was very much less than the gross sum which the defendants contracted to pay for the furniture, equipment and goodwill of the business; but there was no testimony tending to show the value of the goodwill of the business. The testimony showed that at the time the sale was made each one of the apartments was rented, and that plaintiff had a list of appli-

cants desiring to rent when any of the apartments should become vacant. The learned trial judge made findings of fact in favor of the defendants, and entered a decree accordingly, denying any relief to plaintiff. After carefully studying the entire record, we can find no basis to support such findings or decree. A perusal of the entire record satisfies us that none of the fraudulent representations alleged in the answer have been sustained by proof, and that it is our duty to find in favor of the plaintiff.

Defendants contend that upon this appeal this court is bound by the findings of the lower court upon the facts. If this were an action at law, and not a suit in equity, and if the action had been tried by the court without the intervention of a jury, the findings of the lower court would be deemed a verdict, and would be conclusive upon us. This, however, is a suit in equity, as to which the statute provides:

"Upon an appeal from a decree given in any court, the suit shall be tried anew upon the transcript and evidence accompanying it." Section 556, Or. L.

7. In conformity with the directions of this statute, it has always been held that the findings of the trial court in an equity suit are not in any way binding on this court upon an appeal from a decree therein and that the case will be tried *de novo* upon such appeal. For the reasons stated, the decree of the lower court will be reversed and a decree will be entered here, foreclosing the mortgage as prayed for in the complaint, and that plaintiff have and recover judgment for his costs and disbursements in both courts.     REVERSED AND DECREE ENTERED.

BURNETT, COSHOW and BELT, JJ., concur.