Argued June 12, 1958, modified and remanded April 15, 1959

# TUCKER *v*. STATE INDUSTRIAL ACCIDENT COMMISSION
## 337 P. 2d 979

*Earl M. Preston,* Assistant Attorney General, Salem, argued the cause for appellant. With him on

the brief were Robert Y. Thornton, Attorney General, and Ray H. Lafky, Assistant Attorney General, Salem.

C. S. *Emmons,* Albany, argued the cause for respondent. On the brief were Willis, Kyle & Emmons, Albany.

Before PERRY,[*] Chief Justice, and ROSSMAN, LUSK, WARNER, McALLISTER,[**] and SLOAN, Justices.

McALLISTER, C.J.

In this case the plaintiff, Lyall Tucker, seeks to recover benefits allegedly due him under the Workmen's Compensation Law, hereinafter referred to as the act. The jury returned a verdict for the plaintiff and from the judgment based thereon, the defendant, State Industrial Accident Commission, appeals.

Plaintiff alleges in his complaint that he was employed by the Cedar Creek Logging Company in its logging operations in Linn county and that both he and his employer were subject to the act. That for sometime prior to July 16, 1955, he had been afflicted with a hernia but had suffered no disability therefrom. That on July 16, 1955, while climbing down from the caterpillar tractor operated by him, "he slipped and fell and experienced an immediate 'giving away' sensation in the groin." That he was unable to continue work and discovered that the pre-existing hernia had been so aggravated by the fall that an immediate operation was necessary for the repair thereof. That the operation for the repair of the hernia was performed on July 18, 1955 and that as a proximate result of the operation, plaintiff suffered what is commonly called a stroke. That as a result of the stroke

[*] Chief Justice when argued.
[**] Chief Justice when decided.

he has been totally disabled and that such disability was the proximate result of the fall from the tractor. That he filed a claim with the commission which was rejected and that his petition for rehearing was also denied by the defendant. Plaintiff prayed that he be awarded compensation for temporary total disability and, also, compensation for permanent total disability, or in the alternative, the maximum award for permanent partial disability.

In its answer the commission admitted that plaintiff had a hernia prior to July 16, 1955; that an operation for the repair of the hernia was performed on July 18, 1955; that plaintiff's claim for compensation was rejected by defendant and that his petition for rehearing was denied. The other material allegations of the complaint were denied.

Plaintiff filed his claim for compensation on a form provided by the commission in which he stated that he slipped "getting off the cat and fell." He did not describe his injury except to indicate that it was on the right side of his body. Plaintiff later filed with the commission a form entitled "Proof in support of a claim for hernia." He therein stated that he was injured when he "was climbing down off the cat and slipped"; that he first knew of his hernia in 1919; that immediately following his injury he felt considerable pain and a burning sensation at the site of the hernia; and that he believed the accident caused the hernia because it "had never bothered much before."

Plaintiff offered evidence tending to prove that he had worked as a cat operator in logging operations for about 25 years and had worked in that capacity for Cedar Creek Logging Company for about five years immediately preceding his injury; that he had had a "slight gathering" in his groin for several years;

that it never caused him any trouble, had not required treatment and had not interfered with his work. Plaintiff testified that the hernia was suddenly aggravated on July 16, 1955 while he was getting off the tractor and that an operation for the repair of the hernia was performed on July 18, 1955. Evidence was offered to prove that as a result of the operation plaintiff sustained a cerebral vascular accident, commonly called a stroke. Plaintiff also testified that as a result of the stroke he was totally disabled until the summer of 1956; that early in that summer he attempted to work but was unable to do so; and that later in the summer he returned and worked as a flagman and night watchman until the logging operation ceased in the fall.

■ The commission challenged the sufficiency of the evidence by a motion for a non-suit and for a directed verdict. The commission contended that there was no substantial evidence tending to prove (1) that plaintiff's hernia was immediately preceded by an accident arising out of and in the course of his employment or to prove (2) that the stroke was the proximate result of the operation to repair the hernia. The denial of these motions is assigned as error.

■ The commission argues that the plaintiff cannot recover in this case because he was afflicted with a hernia long prior to July 16, 1955. This contention is clearly erroneous. The original Workmen's Compensation Law, enacted by Oregon Laws 1913, ch 112, contained no provision restricting the right to recover for hernia. The act was amended in 1917 to limit the right to recover benefits on account of hernia. Oregon Laws 1917, ch 288, § 21 (d) read as follows:

"A workman in order to be entitled to compensation for hernia must prove (1) *that the hernia did*

*not exist prior to the date of the alleged accident,* and (2) that it was immediately preceded by an accident arising out of and in the course of employment. \* \* \*" (Italics supplied)

The foregoing provision remained unchanged until 1943 when it was amended by Oregon Laws 1943, ch 379 to read as follows:

> "Sec. 102-1762. A workman, in order to be entitled to compensation for hernia, must prove that the hernia was immediately preceded by an accident arising out of and in the course of employment."

As amended, the statute no longer required a workman to prove that his hernia did not exist prior to the date of the alleged accident. The plain intent of the amendment was to permit a workman who was afflicted by a non-disabling hernia to recover compensation if such hernia was sufficiently aggravated so as to become disabling by an accident arising out of and in the course of his employment .

Until 1945 it was necessary for a workman to prove that the accident which caused his hernia was the classical accident caused by violent or external means. See ORS 656.202 prior to its amendment in 1957 and *Burrows v. State Ind. Acc. Com.,* 209 Or 352, 306 P2d 395.

In 1945 the restrictions on the right to recover for hernia were further modified. Oregon Laws 1945, ch 246 amended the applicable provision to read:

> "A workman, in order to be entitled to compensation for hernia, must prove that the hernia was immediately preceded by an accident arising out of and in the course of employment; *provided, that the requirements of an accident as defined by section 102-1754, O.C.L.A. [now ORS 656.202], shall*

*not apply in case of a claim arising under this section.*" (Italics supplied)

After the foregoing amendment in 1945 a workman could recover for an injury even though it was the accidental result of an intentional act. Proof of an accident caused by violent and external means was no longer necessary in hernia cases. In 1957 the legislature discarded the old definition of accident in all cases. See ORS 656.202 as amended by Oregon Laws 1957, ch 718, § 3.

In view of the foregoing legislative history of ORS 656.220, it is apparent that if plaintiff's pre-existing non-disabling hernia was suddenly aggravated by an accident arising out of and in the course of his employment so as to become disabling, he is entitled to compensation for such hernia. Concerning the aggravation of his hernia, plaintiff testified, in part, as follows:

"A   I just started to get off the cat and smoke a cigarette and I jumped down on the ground, and it seemed like *it penetrated or went on down.* I didn't have any more hold or nothing. (Italics supplied)

"Q   You jumped off the cat?
"A   Yes, and just went on down on the ground.

"Q   Had you planned on jumping off the cat?
"A   That's the way we usually got off when the ground was good on that side.

"Q   You jump off?
"A   Yes.

"Q   You jumped off the cat and just kept going?
"A   Yes, just paralyzed me then."

The above and other testimony of the plaintiff was ample evidence to support a finding that a disabling aggravation of plaintiff's hernia was immediately preceded and caused by an accident arising out of and in the course of his employment.

There is also substantial evidence tending to prove that the stroke was caused by the operation to repair the hernia. The stroke occurred within a few hours after the operation. While Dr. Herron admitted that a stroke may result from one of several different causes and that he had had few cases in his own experience of a stroke caused by an operation, he was quite positive that in this particular instance the operation was at least, as he said, a "major factor." The doctor was asked whether in his opinion there was a reasonable probability that the stroke was brought about by the surgery and replied, "I feel certain there is some connection." In answer to a question as to whether the stroke would have occurred without the surgery, the doctor replied, "My sincere feeling is that it is unlikely it would have occurred." This testimony was sufficient to support a finding by the jury of a causal connection between the operation and the stroke. See *Armstrong v. State Ind. Acc. Comm.,* 146 Or 569, 31 P2d 186 and *Heuchert v. State Ind. Acc. Comm.,* 168 Or 74, 121 P2d 453. The court did not err in denying defendant's motions for a non-suit and a directed verdict.

Defendant assigns as error the failure of the court to sustain its objection to certain questions asked of plaintiff. The objection was on the ground that the questions were leading. Leading questions on direct examination may be permitted in the sound discretion of the trail court. See ORS 45.560; 3 Wigmore on Evidence 124, § 770; *State v. Ogden,* 39 Or 195, 65 P 449; and *Yokota v. Lindsay et al.,* 116 Or 641, 242 P 613. We can not say that the trial court abused its discretion in this case. As a result of the stroke, plaintiff suffered from aphasia, or an impairment of the power to use or understand speech, and had not fully

recovered at the time of trial. He seemed to have difficulty in expressing himself clearly and the court did not abuse its discretion in permitting one or two leading questions which served in the main to clarify plaintiff's answers to previous questions.

■■ We have disposed of the errors assigned by the defendant in its brief but for the reasons hereinafter pointed out we find it necessary to take notice of an error of law appearing on the face of the record. Throughout this proceeding, both before the commission and in the court below, plaintiff has made no claim that he received any injury except an aggravation of a pre-existing hernia and a stroke caused by the operation to repair the hernia. No evidence, not even a scintilla, was offered to prove any other injury.

The issues presented for trial by the pleadings were (1) whether an accident arising out of and in the course of plaintiff's employment immediately preceded and caused a disabling aggravation of plaintiff's pre-existing hernia; (2) whether the operation for the repair of the hernia caused a stroke and consequent disability; and (3) the extent of such disability. It was apparently agreed during the trial that the extent of the disability would not be submitted to the jury. We assume the parties intended to leave this issue to be determined by the commission if the other issues were settled in favor of plaintiff.

In submitting the issues to the jury, the court, at the request of counsel for plaintiff, submitted to the jury a special verdict posing two questions. The two questions and the jury's answers thereto were as follows:

"Question 1. Did the Plaintiff sustain personal injury by accident arising out of and in the course

of his employment by Cedar Creek Logging Company on July 16, 1955?

"Answer Yes (yes or no).

"If your answer to Question 1 is 'no', then do not answer question 2.

"Question 2. Did the Plaintiff sustain personal injury other than a hernia as a proximate result of said injury by accident?

"Answer Yes (yes or no)."

Based on the above verdict the court entered a judgment, the material portion of which reads as follows:

"IT IS HEREBY ORDERED That the Plaintiff's claim for injury of July 16, 1955 be and the same is hereby referred back to the defendant and defendant is hereby ordered and directed to allow said claim *except as to any hernia arising therefrom,* and defendant is ordered and directed to make a determination as to the extent of disability sustained by plaintiff by reason of said injury *other than a hernia,* and to pay compensation to plaintiff in accordance with its findings." (Italics supplied)

Since this case was tried on the theory that the only injury received by the plaintiff was the aggravation of a pre-existing hernia and that the only disability suffered by plaintiff resulted from the hernia and the operation to repair it, it is apparent that the foregoing judgment fails to adequately settle the issues involved in this case. In the absence of claim, pleading or proof of any injury other than the hernia and the stroke, the judgment is erroneous.

However, instead of remanding the case for new trial, we are of the opinion that we can determine what judgment should have been entered in the court below and direct such judgment to be entered. Art VII, § 3 of the constitution. See also *Hicks v. Hill Aero. School,* 132 Or 545, 286 P 553.

The court instructed the jury as follows:

"If you find from a preponderance of the evidence that the plaintiff sustained personal injury other than a hernia as a proximate result of any injury by accident which you may find that he sustained, then he would be entitled to compensation though he had a pre-existing hernia.

"Any injury which you find from a preponderance of the evidence that plaintiff may have sustained as the proximate result of surgery performed upon him, which surgery was made necessary by an injury resulting from accident, would be considered to have proximately resulted from such injury by accident, and the commission would be required to allow a claim for such injury and to pay plaintiff compensation for disability resulting therefrom. However, the plaintiff has the burden of proving all these matters by the preponderance of evidence.

"Whether an accident suffered by a workman directly causes a diseased condition or lights up a pre-existing diseased condition, the disability resulting is charged to the accident, and the workman is entitled to compensation under the workmen's compensation law for such disability.
"* * * * *.

"It is the defendant's theory of this case that this is a claim based upon hernia. I instruct you that, under the workmen's compensation law of the State of Oregon, plaintiff, to be entitled to compensation for hernia, must prove that the hernia was immediately preceded by an accident."

After the extent of disability was eliminated the two issues made by the pleadings remaining for determination were (1) whether plaintiff's pre-existing hernia was aggravated by an accident arising out of and in the course of his employment and (2) whether the operation for the repair of the hernia caused the stroke and the disability resulting therefrom. As we have

pointed out, there was substantial evidence to support a finding in favor of plaintiff on both of these issues. Both issues were submitted to the jury by the instructions quoted above. The instructions cover both aggravation of a pre-existing hernia and the stroke which followed the operation. The instruction that disability caused by an accident which "lights up" a pre-existing condition is compensable obviously refers to the pre-existing hernia. The instruction concerning surgery just as plainly refers to the stroke which followed the operation. It will be noted that the instructions concerning surgery refer to the disability resulting therefrom as an "injury." We think the preceding instruction concerning injury "other than a hernia" also referred to the consequences of the surgery.

The questions in the special verdict are consistent with the instructions and must be construed to have been framed in the light of the issues submitted to the jury by the instructions. Since there were two questions to be answered, it must be assumed that they were intended to refer to different issues. The first question covers the issue of the aggravation of the pre-existing hernia by accident. The second question covers the issue of whether the stroke was caused by the operation to repair the hernia.

Since the court did not expressly withdraw any of the issues made by the pleadings and the evidence, it would be highly unreasonable to infer that it intended to do so by the form of verdict submitted to the jury, which is broad enough to cover all the issues submitted in the charge.

The judgment entered by the court is erroneous because of its indefiniteness. It finds that the plaintiff sustained personal injury *other than a hernia,* but leaves undetermined the question of what the injury

was. But a construction of the verdict which gives effect to both its provisions and is responsive to the issues and the evidence requires a judgment that the plaintiff sustained by accident the aggravation of a pre-existing hernia which made necessary an operation that caused the plaintiff to suffer a stroke, all the proximate result of the accident.

The case is remanded to the circuit court with instructions to vacate the judgment heretofore entered and to enter a judgment directing the defendant to accept plaintiff's claim and to allow him compensation for the hernia sustained on July 16, 1955 and compensation for any disability resulting therefrom or from the operation to repair the hernia to which he may be entitled under the act.

ROSSMAN, J., specially concurring.

I do not believe that the court ought to embrace the authority conferred by Art VII, § 3, Constitution of Oregon in disposing of this case. I am aware of no occasion for employing that authority. I likewise do not believe that it is necessary to vacate the circuit court's judgment. We need do nothing more than correct a word or two that appears in the judgment. No assignment of error presented by the appellant is sustained by the prevailing opinion, yet the circuit court's judgment is vacated, that is, reversed. Inadvertently, the trial judge, in preparing his judgment, employed terms which the majority criticize because of "indefiniteness." We need go no further than render them definite.

It is clear from the prevailing opinion that the circuit court had in mind the same conception of the facts as we have, but it employed a couple of unfortunate terms.

The majority, in vacating the judgment and ordering the entry of a new one which will grant the injured workman relief for his hernia, will award him substantially more recovery than they say the challenged judgment grants him. Accordingly, the injured workman who is the respondent and who has not cross-appealed will secure more relief than the challenged judgment grants him notwithstanding the well established rule that a respondent can never secure more relief than the trial court awarded to him.

I think we need do no more than correct a word or two in the challenged judgment. To do as the majority proposes will constitute an unfortunate precedent.